No. 94-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

RUSSELL R. MODDISON,

    Defendant and Appellant.

**FILED**

OCT 18 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Margaret Johnson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William F. Hooks, Appellate Defender Office,
Helena, Montana

    For Respondent:

        Joseph P. Mazurek, Attorney General, Jennifer
Anders, Assistant Attorney General; Brant Light,
Cascade County Attorney, Great Falls, Montana

. Submitted on Briefs: August 1, 1996

Decided: October 18, 1996

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Russell R. Moddison (Moddison) was charged by information filed in the Eighth Judicial District Court, Cascade County, with sexual intercourse without consent, a felony, and obstructing a peace officer, a misdemeanor. Moddison pled guilty to the felony charge as part of a plea agreement, then subsequently moved the District Court to withdraw his guilty plea. The District Court denied Moddison's motion. Moddison appeals.

We affirm.

The issue for our review is whether the District Court abused its discretion when it denied Moddison's motion to withdraw his guilty plea.

**FACTS**

The charges filed against Moddison resulted from an incident which occurred in February 1992 in the vicinity of Great Falls, Montana. Moddison, Robert Gould, Ian Johnson, Jordan Mattfeld, Tammy Archer, and Janetta Jo Clark had been drinking for a few hours at the Black Eagle Country Club when they all decided to go to the residence of Johnson and Mattfeld. At the residence, Clark and Mattfeld had a drinking contest which led to Clark drinking nearly half of a bottle of whiskey. Clark had already had nine drinks at the Black Eagle Country Club.

Clark soon "passed out" in one of the bedrooms. Moddison, Gould, and Johnson then had sex with Clark individually. All three men claimed that Clark consented.

2

About two hours later Moddison returned to the bedroom to check on Clark and discovered that she was cold to the touch and had no discernable pulse. The coroner later determined that Clark had died at 4:30 a.m., and at the time of death had a blood alcohol level of 0.42 gm/dl. The cause of Clark's death was asphyxia, prompted by the extraordinarily high level of alcohol in her body.

Moddison and Gould left the residence in Moddison's truck, but soon abandoned the truck and ran when they saw a Cascade County Sheriff's vehicle. Moddison was later found by authorities in the basement of his mother's house. Moddison, Gould, and Johnson were ultimately charged in a joint information with sexual intercourse without consent, or, alternatively, attempted sexual intercourse without consent. Moddison and Gould were also charged with the misdemeanor offense of obstructing a peace officer. The information was later amended to delete the alternative charge of attempted sexual intercourse without consent.

Each defendant was appointed separate counsel and each defendant pled "not guilty" to the charges. Counsel believed that a joint defense would be in their clients' best interests because each defendant admitted to having sex with Clark but claimed that she had consented to the acts. Later, after a review of the evidence and a discussion with the Cascade County Attorney's Office, counsel concluded that it would be in their clients' best interests to enter into a plea agreement deal. Counsel were particularly concerned that evidence of Clark's extreme

intoxication would prevent a jury from finding that she consented to intercourse with the three defendants.

The plea agreement offered by the State required Moddison and Gould to plead guilty to the charge of sexual intercourse without consent, and required Johnson to plead guilty to an amended charge of obstructing a peace officer. In return, the State agreed to drop the misdemeanor charges against Moddison and Gould, and recommend to the court that Moddison and Gould each receive a ten year sentence with five years suspended. However, the State refused to stipulate during plea negotiations that Moddison and Gould would not have to undergo sexual offender treatment, despite the defendants' adamant belief that the treatment was not appropriate for them. The parties eventually entered into a non-binding plea agreement in which the issue of sexual offender treatment was left to the court's discretion.

The record reveals that the plea agreement was attractive to counsel because counsel believed that the State's leniency toward Johnson would effectively prevent the court from punishing Moddison and Gould too harshly. Counsel also believed that the non-binding nature of the plea agreement would allow them to recommend a lesser prison term than the State would recommend. Further, Moddison's attorney hoped that if his recommendation of a suspended prison term was accepted by the court, then the sexual offender treatment program, if it were imposed, could be completed by Moddison in a local community program.

The record also reveals that Moddison's attorney informed Moddison of the possibility that he might be sentenced to prison and ordered to undergo a sexual offender program there. Moddison's attorney testified that he explained to Moddison that his admission that he committed a sexual crime was required before he could successfully complete the program. Moddison steadfastly refused to make that admission, and according to Moddison's attorney said "if he had to [admit to the crime] he would sit at the prison until he was discharged." Moddison intended to enter an *Alford* plea of guilty, in which he could concede the strength of the State's case against him without admitting that he committed a crime. *See* North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162.

Moddison's attorney apparently realized the potential dilemma Moddison would face if, after he entered his *Alford* plea, the court sentenced him to a prison term and ordered him to undergo sexual offender treatment there: by refusing to admit to his crime, Moddison would be unable to complete the program and thus would likely be ineligible for parole. Moddison's attorney therefore advised Moddison that if such a sentence were imposed, he could choose from among three remedies: appeal the sentence, seek sentence review, or withdraw the plea.

At the October 18, 1993 change of plea hearing, Gould fired his attorney, withdrew from the plea agreement, and announced his intention to go to trial. Gould was later convicted of sexual

5

intercourse without consent, and this Court affirmed his conviction.  State v. Gould (1995), 273 Mont. 207, 902 P.2d 532.

Moddison and Johnson conformed to the plea agreement, and Moddison entered an *Alford* plea of guilty to the charge of sexual intercourse without consent.  Moddison had previously signed the plea agreement and an "Acknowledgment of Waiver of Rights by Plea of Guilty," and at the hearing Moddison's attorney went through the waiver of rights and the plea agreement to confirm that Moddison understood their terms.  Moddison testified that: he understood that the issue of a sexual offender program was left to the discretion of the court; he understood that the court did not have to abide by the plea agreement; he understood that the court could impose the maximum penalty provided by law; he understood that if the court did not abide by the plea agreement he could not then withdraw his guilty plea; he understood that the court could designate him a dangerous offender as well as limit his eligibility for parole; he understood that he had the option of going to trial; he voluntarily signed the plea agreement; he was satisfied with the services of his attorney; and, he believed he would be convicted of the charge if he went to trial.

Moddison's plea was accepted by the court and sentencing was set for a later date.  In the meantime, the court ordered Moddison to undergo a sexual offender evaluation in Missoula, Montana. Moddison missed three appointments with the Missoula evaluator, claiming that he did not have the money to purchase bus fare from Great Falls to Missoula.  Because Moddison had not undergone the

6

evaluation, and because additional offenses were brought to the court's attention which did not appear in the presentence investigation, the sentencing hearing was continued to May 19, 1994. At the May hearing, the court sentenced Moddison to a ten year prison term with five years suspended. The court also ordered Moddison to complete sexual offender treatment and a chemical dependency program at the prison before being considered for release.

Moddison arrived at the Montana State Prison on May 25, 1994. He soon learned that the sexual offender treatment program had an extensive waiting list and that the program itself took at least three years to complete. On June 9, 1994, Moddison filed two pro se motions, entitled "Notice for Appointment of Counsel" and "Notice of Appeal," with the District Court. After the District Court failed to act on Moddison's motions, Moddison filed a motion and brief with this Court. We ordered the District Court to conduct a hearing regarding Moddison's appointment of counsel motion. The court appointed counsel from the Montana Appellate Defender's Office to represent Moddison. This Court again remanded Moddison's case to the District Court after we determined that Moddison's pro se motions were an attempt to withdraw his guilty plea. After an October 24, 1995 hearing on Moddison's request to withdraw his guilty plea, the court denied Moddison's request. Moddison appealed.

## STANDARD OF REVIEW

We explained the applicable standard of review in State v. Enoch (1994), 269 Mont. 8, 11, 887 P.2d 175, 177:

> No set rule or standard exists under which a trial court addresses a request to withdraw a guilty plea; each case must be considered in light of its unique record. Our standard in reviewing a district court's denial of a motion to withdraw a guilty plea is whether the court abused its discretion. (Citations omitted.)

## DISCUSSION

Did the District Court abuse its discretion when it denied Moddison's motion to withdraw his guilty plea?

Moddison has four bases for his argument that the court abused its discretion: first, the court failed to inform him that his parole eligibility would be restricted by the requirement that he complete the sexual offender program; second, his request to withdraw was timely and was based on advice of counsel; third, his plea was an *Alford* plea that was part of a package plea deal; and fourth, his plea was based on the mistaken advice of his attorneys. Moddison's first three bases track the language of three factors which this Court will balance in determining whether a defendant has established the "good cause" required by § 46-16-105(2), MCA, which would allow him to withdraw a guilty plea:

> (1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;
>
> (2) the promptness with which the defendant attempts to withdraw the plea; and
>
> (3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

<u>Enoch</u>, 887 P.2d at 177.

With respect to factor (1), Moddison argues that the court's interrogation was inadequate because it failed to inform him that his parole eligibility could be restricted by his failure to complete the sexual offender program at the prison. Moddison contends that the interrogation should have specifically informed him of the conflict posed by his refusal to admit guilt and the likely sentencing condition that he admit guilt--the first step toward completing the sexual offender program--in order to gain parole eligibility. To support his argument, Moddison cites § 46-12-210, MCA, which provides, in relevant part:

> (1) Before accepting a plea of guilty, the court shall determine that the defendant understands the following:
>
> . . . .
>
> (iii) the maximum penalty provided by law, including the effect of any penalty enhancement provision or special parole restriction; . . . .

Moddison also argues that the interrogation was inadequate because the court had little active involvement; Moddison's own attorney conducted the interrogation.

That Moddison's attorney, rather than the court, conducted the interrogation in the presence of the court is not reversible error, in light of our determination that the interrogation achieved its fundamental purpose: the determination of Moddison's understanding of the consequences of entering his plea. The record reveals, as Moddison correctly points out, that the District Court was not actively involved in Moddison's interrogation at the change of plea

9

hearing. However, the record also reveals that Moddison's attorney, who conducted the interrogation, asked Moddison the same questions which we have held constitute an adequate interrogation. In State v. Allen (1994), 265 Mont. 293, 876 P.2d 639, where the court denied defendant's request to withdraw his *Alford* plea, we stated:

> The transcript of the hearing following Allen's guilty plea shows that the court carefully questioned him concerning the sufficiency of his legal counsel, his feelings concerning his decision, his lack of alcohol or drug influence, his understanding of the nature of the mitigated deliberate homicide charge, the consequences to pleading guilty to this charge, the fact that the judge would not be bound by any recommendation from the parties, his understanding of the loss of his rights in a trial situation. The court also had Allen confirm the reason why he felt he was guilty of one count of mitigated deliberate homicide. Within the court's detailed questioning of Allen, the court explicitly informed Allen that the sentence carried a maximum sentence of 40 years. The judge then informed Allen that as the sentencing judge he could put any restrictions on a possible parole that he wished and that he would not be bound by any suggestions from anyone. Further, the court explained in great detail what a guilty plea meant to Allen in terms of foregoing rights such as confrontation of witnesses against him.
>
> In the present case, the court specifically told Allen that he could be denied parole totally and as a consequence would have to serve all 40 years, or that he could be labeled a dangerous offender and that if so designated he would have to serve 20 of the 40 years for the offense. The court clearly informed Allen that it was under no responsibility to accept the conditions of the plea agreement reached by the parties. We conclude that the District Court sufficiently interrogated and informed Allen of the ramifications of his guilty plea.

Allen, 876 P.2d at 641. The extent of information covered in the Allen interrogation is almost exactly the same as that which was covered in Moddison's interrogation. Furthermore, § 46-12-210(2), MCA, provides that the interrogation requirements of subsection (1)

10

"may be accomplished by the defendant filing a written acknowledgment of the information contained in subsection (1)." Moddison signed an "Acknowledgment of Waiver of Rights by Plea of Guilty" which addressed all of the requirements of § 46-12-210(1), MCA, except one--that Moddison understood the court was not bound by any plea agreement. Moddison was well aware of the court's discretion, as evidenced by his answers at the interrogation and by the plea agreement, which he signed.

Moddison argues, however, that because he was not questioned about the precise ramifications of his *Alford* plea in regard to the length of his sentence and limitation on parole, the interrogation was inadequate. We disagree.

The record demonstrates that Moddison was aware that his admission that he committed a crime was a necessary element of successful completion of the sexual offender treatment program. Moddison's attorney testified that

> [Moddison] understood that to progress through a sexual offender program he would have to admit to the offense. He felt -- and I believe he took it as a matter of personal honor -- that he would not admit to the offense, and if he had to, he would sit at the prison until he was discharged.

The record also demonstrates that Moddison was informed by his attorneys that the sentencing judge did not have to abide by the plea agreement, that Moddison could receive the maximum sentence of 40 years imprisonment, and that Moddison could be ordered to undergo the sexual offender program. In addition, during the interrogation at the change of plea hearing Moddison stated that he

11

understood that the judge did not have to abide by the plea agreement and that his eligibility for parole could be limited by the sentencing judge. As it turned out, Moddison's eligibility for parole was limited by the sentencing judge when he ordered that Moddison undergo the sexual offender program, a program which Moddison knew from the earliest plea discussions with his attorneys would be impossible to complete without his admission that he committed a crime. We conclude that, despite Moddison's statements to the contrary, he did know of the consequences of his *Alford* plea, specifically that his parole eligibility could be limited by the requirement that he complete the sexual offender program, and further limited by his decision not to admit that he committed a crime. Factor (1) weighs in favor of the court's denial of Moddison's request to withdraw his plea.

As to the promptness factor, Moddison argues that the length of time between the entry of his *Alford* plea and his motion to withdraw his plea is within this Court's allowable time frame. Moddison moved to withdraw his plea on June 9, 1994, approximately eight months after he entered his *Alford* plea on October 18, 1993. We have held that a ten month period between entry of the plea and the request to withdraw the plea is relatively prompt. State v. Laverdure (1984), 212 Mont. 31, 34-35, 685 P.2d 375, 377.

Alternatively, Moddison argues that his attempt to withdraw his plea was exceedingly prompt when measured from the time that he was sentenced. Moddison argues that the court's imposition of his sentence should be the measuring point for purposes of the

promptness factor because his counsel advised him that sentencing would trigger a plea withdrawal. The State has not addressed the promptness factor in its brief, and because Moddison's request to withdraw his plea was made within this Court's allowable time frame, we need not discuss the merits of his alternative argument. The promptness factor weighs in Moddison's favor.

As to factor (3), Moddison argues that because his plea was a part of a "package" plea agreement, the court was under a duty to carefully examine the voluntariness of Moddison's plea. Essentially, Moddison argues that his decision to enter a plea was influenced by and conditioned on the deals struck with the other two defendants, Johnson in particular. Moddison cites United States v. Caro (9th Cir. 1993), 997 F.2d 657, 659, to support his contention that the voluntariness of a defendant's plea is at best questionable when his plea is a part of a "package deal" and conditioned on the pleas entered by the other participants in the deal.

Moddison's argument, however, misses some important points. First, Gould withdrew from the plea agreement on the day of the change of plea hearing, yet Moddison and Johnson were allowed to go ahead with their pleas. Moddison's attorneys testified that they understood that when Gould withdrew, there was no longer a "package deal" and Moddison was free to do as he wished. The attorneys discussed this with Moddison, and he entered his *Alford* plea. Moddison's plea ultimately was not a part of a package deal with the other defendants; his plea was not conditioned on their pleas.

13

Second, our review of the record shows that Moddison's decision to enter an *Alford* plea was due in large part to the overwhelming evidence against him. Moddison's attorneys informed him of their conclusion that proving consent would be next to impossible due to Clark's extreme intoxication at the time of sexual intercourse. In the "Acknowledgment of Waiver of Rights by Plea of Guilty", Moddison explained why he was entering an *Alford* plea:

> I admit to have sex with Janetta Jo Clark [sic]. I believed that she had consented. However, after reading police report [sic] and considering the evidense [sic] against me I believe that the State of Montana can prove my guilt.
> Therefore I am pleading guilty.

Moddison was looking after his own interests when he decided to enter his plea, a plea that was not a part of a "package deal."

Finally, we have stated that "[t]he third factor is intended to prohibit a criminal from 'escaping the obligations of his [or her] plea agreement after accepting the benefits thereof.'" State v. Milinovich (1994), 269 Mont. 68, 74, 887 P.2d 214, 217 (citations omitted). The plea agreement here certainly conferred some benefits upon Moddison: the State dropped the charge of obstructing a peace officer; the State recommended a much lesser sentence than the maximum sentence provided by law; and, the State did not recommend sexual offender treatment, but left that issue to the court's discretion. We conclude that factor (3) weighs in favor of the court's denial of Moddison's request to withdraw his plea.

Moddison has raised another "good cause" indicator, one not specifically provided for by statute or within the three factors. Moddison contends that his guilty plea was based on the mistaken advice of his attorneys. Specifically, Moddison explains that his attorneys represented to him that if he were sentenced to prison and ordered to undergo the sexual offender program there, he would be able to get into the program quickly, due to his probable short term of imprisonment. This information turned out to be inaccurate, as Moddison discovered upon his arrival at the prison that he would be placed on a long waiting list for the program. Moddison also notes that his attorneys advised him that if he were sentenced and ordered to undergo the sexual offender program that he would have three remedies: he could appeal on constitutional grounds; he could pursue sentence review; or he could withdraw his plea. Moddison argues that this advice was mistaken.

While we can concede that some of this advice was inaccurate, we cannot conclude that this "good cause" factor tips the balance in Moddison's favor. The plea agreement, the "Acknowledgment of Waiver of Rights," and Moddison's responses to the interrogation clearly show that Moddison had a solid understanding that his sentence was ultimately subject to the court's unfettered discretion, Moddison understood that the court could impose any sentence within the range of the statutory minimum and maximum, that the court could restrict his eligibility for parole, and that the court could order him to undergo sexual offender treatment. We cannot see how Moddison can reasonably argue that any inaccuracies

in the advice described above mean that his decision to enter into a plea agreement was based on a misunderstanding so fundamental as to render that decision an uninformed one. The record shows that the evidence against Moddison was overwhelming and that this was the reason that his attorneys advised him to enter a plea. The record also shows that Moddison was always aware that his sentence was subject to the court's discretion. By advising Moddison as they did, the attorneys were merely explaining what they thought potential remedies were for one sentence out of many that Moddison could potentially have received.

After weighing these factors, we conclude that Moddison did not establish the "good cause" necessary for withdrawal of a guilty plea as required by § 46-16-105(2), MCA, and as elaborated in Enoch and its predecessor cases. The District Court did not abuse its discretion when it denied Moddison's motion to withdraw his guilty plea.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

16